2012 COA 80

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ryan J. KRUEGER, Defendant– Appellant.**

**No. 08CA2148.**

Colorado Court of Appeals, Div. II.

May 10, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Borquez Law Office, Robert P. Borquez, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

¶ 1 Defendant, Ryan J. Krueger, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder and conspiracy to commit first degree murder. We affirm. In doing so, we hold, as matters of apparent first impression in Colorado, that a criminal defendant does not have a right to review all discovery materials obtained by his counsel or a constitutional right to testify at a pretrial suppression hearing where his counsel decides not to call him as a witness.

## I. Background

¶ 2 According to the prosecution's evidence, defendant learned that P.E. had been "snitching" to the police about people with whom defendant dealt drugs. He and his friends C.A. and B.G. then went to P.E.'s house and strangled her to death.

¶ 3 Five years after the murder, police arrested defendant. The People charged him with first degree murder, conspiracy to commit first degree murder, and a crime of violence.[1]

¶ 4 Defendant represented himself at trial. A jury found him guilty of the lesser nonincluded offense of accessory to a crime, but could not reach verdicts on the murder and conspiracy charges. The district court declared a mistrial on those charges.

¶ 5 The People retried defendant, who again represented himself. A jury found him guilty of first degree murder and conspiracy to commit first degree murder.

## II. Discussion

¶ 6 Defendant raises numerous contentions on appeal. We address and reject each contention in turn.

### A. Substitute Counsel

¶ 7 Defendant contends that the district court erred by declining to appoint substitute counsel before the first trial because his waiver of his right to counsel was ineffective. His waiver was ineffective, he argues, because he had a conflict with the assigned public defenders that arose when counsel (1) refused his requests to see all of the discovery materials, and (2) refused to allow him to testify at a pretrial suppression hearing.

#### 1. Relevant Procedural Facts

¶ 8 Before the first trial, defendant asked the court to dismiss his appointed public defenders, alleging, as relevant here, that their refusal to show him all of the discovery materials had caused a complete breakdown in communication.

¶ 9 At the first hearing on the matter, one of defendant's attorneys told the court that reviewing all of the discovery with defendant would be too time consuming. The attorney noted, however, that defense counsel had

---

1. Ultimately, the People did not try defendant on  the crime of violence charge.

summarized the important parts of the discovery for defendant and had watched a videotape of one coconspirator's statements with him. The court asked counsel to explore whether they could allow defendant to see the documents critical to the case.

¶ 10 At a second conflict hearing, defendant again asserted a conflict based on counsel's failure to review discovery with him. The court found no conflict requiring substitution of counsel. Likewise, at a third conflict hearing, the court again found no such conflict, and told defendant that he did not have a right to review all of the discovery materials.

¶ 11 Several months later, defense counsel informed the court that defendant had asked them to withdraw from the case. Defendant repeated that he had seen very little of the discovery materials, and also asserted that counsel had said they would not allow him to testify at an upcoming suppression hearing. The court found that counsel could not bring all of the discovery materials to defendant (who was incarcerated) to review with him because the materials were too voluminous, and that it was for counsel to decide what discovery information would be provided to defendant. The court also concluded that the decision whether to allow defendant to testify at the suppression hearing was a tactical decision for his counsel to make, and therefore that decision did not create a justification for substituting counsel.

¶ 12 Defendant chose to proceed pro se, and the court advised him accordingly. The court readvised him on the first day of the first trial, at which point defendant asked the court to appoint his advisory counsel to represent him. After initially rejecting the request, the court asked advisory counsel whether he would be ready to represent defendant at trial that day, noting that there would not be a continuance. Advisory counsel responded that he would not be ready, but that he would be willing to undertake representation if the court would continue the trial. The court reiterated that it was not willing to continue the trial, and again denied defendant's request.

## 2. Applicable Law: Waiver of Right to Counsel and Request for Substitute Counsel

¶ 13 A defendant's waiver of the right to counsel is effective only when it is voluntary, knowing, and intelligent. *People v. Arguello*, 772 P.2d 87, 94 (Colo.1989); *People v. Wallin*, 167 P.3d 183, 190 (Colo.App. 2007). A defendant's waiver is voluntary where the defendant refuses to proceed with appointed counsel without good cause. *Arguello*, 772 P.2d at 94; *People v. Smith*, 77 P.3d 751, 757 (Colo.App.2003). Thus, when the court determines that a defendant has not established good cause warranting substitution of counsel, the court can require the defendant to choose between continuing to be represented by existing counsel or proceeding pro se. *Arguello*, 772 P.2d at 94; *Smith*, 77 P.3d at 757; *People v. Garcia*, 64 P.3d 857, 863 (Colo.App.2002).

¶ 14 Good cause for substituting counsel exists where there is a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that may lead to an apparently unjust verdict. *People v. Kelling*, 151 P.3d 650, 653 (Colo.App.2006). Substitution of counsel is not warranted, however, where the defendant lacks some well-founded reason for believing that the appointed attorney cannot or will not competently represent him. *Id.; Garcia*, 64 P.3d at 863. "Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel." *Kelling*, 151 P.3d at 653.

¶ 15 Whether a defendant effectively waived his right to counsel is a mixed question of fact and law that we review de novo. *People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010).

### 3. Analysis

#### a. Opportunity to Review All Discovery Materials

¶ 16 Defendant contends that a conflict arose between him and his attorneys because he was unable to make intelligent decisions regarding his defense without access to all of the discovery materials. He cites no authority, however, holding that a

criminal defendant who is represented by counsel has an unqualified right to review personally all discovery materials. In the few cases in which the issue has arisen, most courts have held that "[t]rial counsel's decision whether to provide his client with discovery materials constitutes a matter of trial strategy and judgment that ultimately lies within counsel's discretion." *People v. Davison*, 292 Ill.App.3d 981, 227 Ill.Dec. 75, 686 N.E.2d 1231, 1236 (1997) (discussing numerous problems which could arise were a defendant entitled to review discovery materials on request); *see also Short v. Davis*, 2011 WL 3682767, *5–8 (D.Colo. No. 10–cv–02250–REB, Aug. 23, 2011) (unpublished order) (substitute counsel not warranted where the defendant claimed that counsel had failed to show him discovery materials because counsel said that he had advised the defendant of the discovery; the defendant's assertion established only that he and counsel disagreed about trial strategy and how to proceed with the case); *People v. James*, 362 Ill.App.3d 250, 298 Ill.Dec. 488, 839 N.E.2d 1135, 1141 (2005) (following *Davison*); but see *People v. Smith*, 268 Ill.App.3d 574, 206 Ill.Dec. 308, 645 N.E.2d 313, 317–18 (1994) (the defendant was entitled to a hearing on his postconviction motion alleging that counsel had not shown him certain discovery materials).

¶ 17 We agree with the majority view. As pointed out by the Illinois Court of Appeals in *Davison*, allowing a defendant unfettered access to discovery materials could create friction between the defendant and his attorney. The defendant could become focused on information that counsel believes to be relatively unimportant, making counsel's trial preparation more difficult. *Davison*, 227 Ill. Dec. 75, 686 N.E.2d at 1236. Similarly, a defendant would be more likely to question his attorney's strategic decisions, with little or no justification, thereby undermining the attorney-client relationship. *Id.* And convicted defendants could assert postconviction claims of ineffective assistance of counsel based on the alleged failure to share discovery materials, which could require hearings in a large number of cases because communications between defendants and their attorneys are almost always private. *Id.*

¶ 18 Nonetheless, defendant argues that he was entitled to review the discovery materials under Crim. P. 16(III)(c), which provides, as relevant here, "Defense counsel is not required to provide actual copies of discovery to his or her client if defense counsel reasonably believes that it would not be in the client's interest, and other methods of having the client review discovery are available." He claims that his public defenders failed to make the materials available to him through other methods as required by the rule. The record shows, however, that counsel summarized some materials for defendant's review and showed some materials to defendant. These were appropriate "other methods" for having defendant review discovery.

¶ 19 We also observe that although defendant gained access to all the discovery materials after he chose to proceed pro se, he has not identified what particular items obtained through discovery would have allowed him to make more intelligent decisions, nor has he explained how any of his decisions would have differed had he had access to all of the discovery materials when he was represented by counsel. *Cf. People v. Lopez*, 12 P.3d 869, 871 (Colo.App.2000) (citing *United States v. Winston*, 34 F.3d 574 (7th Cir.1994), for the proposition that a "conclusory allegation that counsel had not provided [the] defendant with [the] opportunity to view material obtained through discovery did not warrant [an] evidentiary hearing to determine whether [the] defendant had [a] fair and just reason to withdraw [his] guilty plea").

¶ 20 And finally, defendant has not cogently explained how his public defenders' failure to show him all the discovery materials gave him a well-founded reason to believe that they would not competently represent him. *See Kelling*, 151 P.3d at 653.

¶ 21 In sum, we conclude that a defendant's counsel's decision to provide the defendant with limited access to selected discovery materials, though the defendant wants to review all discovery materials, does not create a conflict warranting substitution

of counsel.[2] It follows that counsels' refusal here to show defendant all of the discovery materials did not constitute good cause for substitution of counsel.

### b. Right to Decide Whether to Testify at the Pretrial Suppression Hearing

¶ 22 "Defense counsel has broad authority to determine what strategy to employ in the defense of a case." *People v. Davis*, 2012 COA 1, ¶ 87, —— P.3d ——, 2012 WL 19373. However, some constitutional rights are conferred directly on a defendant, and defense counsel must abide by the defendant's decisions to exercise those rights. *Bergerud*, 223 P.3d at 693; *see also Arko v. People*, 183 P.3d 555, 558 (Colo.2008); Colo. RPC 1.2(a). One such right is the right to testify at trial. *Bergerud*, 223 P.3d at 693. Consequently, where a defendant's request for substitute counsel is based on defense counsel's refusal to allow the defendant to testify at trial, the defendant's waiver of his right to counsel is not effective because it "force[s] a choice between his right to counsel and other of his trial rights." *Id.* at 695.

¶ 23 No Colorado appellate decision has addressed whether a defendant's right to decide whether to testify extends to a pretrial suppression hearing. We conclude that it does not, for two reasons.

¶ 24 First, unlike the decision whether to go to trial, the decision whether to move to suppress evidence is a strategic one for counsel to make in the exercise of professional discretion. *See Kimmelman v. Morrison*, 477 U.S. 365, 384–85, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (failure to file a suppression motion is not per se ineffective assistance of counsel because it may be strategic); *Green v. Nelson*, 595 F.3d 1245, 1249, 1251 (11th Cir.2010); *United States v. Chavez–Valencia*, 116 F.3d 127, 134 (5th Cir.1997); *United States v. Aulet*, 618 F.2d 182, 187–88 (2d Cir.1980); *Stevens v. State*, 353 S.W.3d 425, 431 (Mo.Ct.App.2011); *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52, 63–64 (2000); *cf. People v. Moody*, 630 P.2d 74, 77

(Colo.1981) (counsel's decision not to request a preliminary hearing is a matter of strategy, so counsel could waive the defendant's right to such a hearing). Because the strategic decision whether to request a suppression hearing belongs to counsel, rather than the defendant, it stands to reason that the decision whether to present defendant's testimony at any such hearing is also counsel's. *See Pinkard v. State*, 694 S.W.2d 761, 762 (Mo. Ct.App.1985) (decision whether the defendant would testify at suppression hearing was one of strategy for counsel; the defendant's allegation that his attorney denied him his right to testify therefore did not state grounds supporting an ineffective assistance claim).

¶ 25 Second, the reasons for allowing a defendant to decide whether he will testify at trial do not apply in the suppression hearing context.

¶ 26 In *People v. Curtis*, 681 P.2d 504 (Colo.1984), the supreme court held that the right to testify at trial is sufficiently fundamental that only the defendant can waive it. In so holding, the court articulated three reasons why the right to decide whether to testify at trial belongs to the defendant alone.

¶ 27 A defendant's testimony is compelling to the factfinder because it gives an immediate and visible impression of the defendant and it may provide direct evidence of some elements of the crime. Thus, the defendant's testimony may be crucial in determining his fate. *Id.* at 513; *see also Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (the right to testify arises in part out of the Sixth Amendment's Compulsory Process Clause, which grants a defendant the right to call witnesses in his favor, because the most important witness for the defense may be the defendant himself).

¶ 28 Because the defendant's desire to tell his side of the story may be of overriding importance to him, where he wishes to testify, "it is fundamentally wrong to allow his conviction 'by a jury which never heard the

---

**2.** Though defendant notes that Colorado Rule of Professional Conduct 1.16(b)(4) provides that an attorney *may* withdraw from representing a client if the two have a fundamental disagreement, the rule does not require the attorney to withdraw or automatically entitle the client to court-appointed substitute counsel. *See also* Colo. RPC 1.2 cmt. [2], 1.16(a)(3).

sound of his voice.' " *Curtis,* 681 P.2d at 513 (quoting in part *McGautha v. California,* 402 U.S. 183, 220, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated in part on other grounds sub nom. Crampton v. Ohio,* 408 U.S. 941, 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972)).

¶ 29 And,

> the opportunity to be heard lies at the heart of due process.... The defendant's opportunity to place himself and his viewpoint before the finder of fact is necessary to legitimate the outcome of the trial. He has the right to know, as he suffers whatever consequences there may be, that it was the claim that he put forward that was considered and rejected.

*Curtis,* 681 P.2d at 513–14 (citation omitted); *see Rock,* 483 U.S. at 51, 107 S.Ct. 2704 (the right to testify arises in part from the defendant's due process right to have an opportunity to be heard in his own defense).

¶ 30 Each of these reasons emphasizes the importance of allowing a defendant to testify when his ultimate guilt or innocence is at stake. *See also Arko,* 183 P.3d at 558 ("Some trial decisions implicate inherently personal rights which would call into question the fundamental fairness of the trial if made by anyone other than the defendant. Thus, a lawyer must abide by a client's decision regarding ... 'whether the client will testify.' ") (citation omitted) (quoting in part Colo. RPC 1.2(a)). They do not apply in the context of a pretrial suppression hearing, however, because a defendant's guilt or innocence is not determined in such a hearing. *See Simmons v. United States,* 390 U.S. 377, 390–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (testimony by a defendant at a suppression hearing is not admissible against him at trial on the question of guilt); *People v. Rosa,* 928 P.2d 1365, 1371 (Colo.App.1996) (same); *see also People v. Turtura,* 921 P.2d 40, 43 (Colo. 1996) (the defendant's testimony at the suppression hearing would have had no bearing on his ultimate guilt or innocence). Rather, "[t]he whole purpose of [pretrial suppression] hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury." *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *see People v. Jorlantin,* 196 P.3d 258, 262 (Colo.2008) ("the purpose of a suppression hearing is to determine whether the defendant's constitutional rights were violated during the collection of evidence"). And, in deciding that a defendant should not testify at a suppression hearing, counsel does not thereby cause a defendant to relinquish any of his trial rights. *See Arko,* 183 P.3d at 558 (decisions which do not result in relinquishment of a defendant's fundamental trial rights are tactical ones belonging to counsel as "captain of the ship").

¶ 31 This issue has been considered by several federal courts. Most have concluded that a defendant does not have the right to testify at a pretrial suppression hearing over his counsel's decision. *See Liberal v. United States,* 2011 WL 4055404, *5 (S.D. Fla. No. 10–23669–Civ, June 7, 2011) (magistrate judge's report), *adopted,* 2011 WL 4072633 (S.D.Fla. Sept. 13, 2011); *Parker v. Ercole,* 582 F.Supp.2d 273, 296–97 (N.D.N.Y.2008); *Torres v. Ortiz,* 2007 WL 1234938, *10 (D.N.J. No. 06–2176(DRD), Apr. 26, 2007) (unpublished opinion); *Hemingway v. Henderson,* 754 F.Supp. 296, 302 (E.D.N.Y. 1991) ("There is a difference between testifying at a trial that involves a determination of guilt or innocence and testifying at a preliminary hearing the purpose of which is to keep evidence from 'the trier of guilt or innocence for reasons wholly apart from enhancing the reliability of verdicts.' " (quoting in part *Lego v. Twomey,* 404 U.S. 477, 488, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972))); *see also Henry v. Ryan,* 2009 WL 692356, *44 (D.Ariz. No. CV02–656–PHX–SRB, Mar. 17, 2009) (unpublished memorandum) ("it is not clear that the constitutional right to testify at trial also applies to a pretrial hearing"); *United States v. Stewart,* 51 F.Supp.2d 1147, 1158 n. 4 (D.Kan.1999) (same as *Henry), aff'd,* 215 F.3d 1338 (10th Cir.2000) (unpublished table decision); *Narvaez v. United States,* 1998 WL 255429, *5 n. 6 (S.D.N.Y. No. 97 CIV. 8745(SS), May 19, 1998) (unpublished opinion and order) (Sotomayor, J.) (same as *Henry;* noting that "[i]t seems likely ... that the decision to put the defendant on the stand in a pretrial evidentiary hearing has no special constitutional status beyond the right to

present evidence on one's own behalf and is thus committed ... to trial counsel's professional judgment"); *cf. Black v. Uribe,* 2010 WL 4629934, *5 n. 6 (C.D. Cal. No. CV 08-7922 CAS (JCG), Aug. 12, 2010) (unpublished magistrate judge's report and recommendation) (right to testify does not extend to a preliminary hearing), *adopted,* 2010 WL 4628614 (C.D.Cal.2010).

¶ 32 A few federal courts, citing *Rock,* 483 U.S. 44, 107 S.Ct. 2704, appear to have assumed, implicitly and without analysis, that such a right may exist. *See Jones v. United States,* 2011 WL 4702507, *2–3 (D. Utah No. 2:09–CV–360 TS, Oct. 4, 2011) (unpublished memorandum); *Wheeler v. United States,* 2011 WL 2491376, *16 (N.D.W.Va. No. 3:10cv13, Apr. 25, 2011) (magistrate judge's report and recommendation); *see also United States v. Rashaad,* 249 Fed.Appx. 972, 972–73 (4th Cir.2007) (unpublished opinion) (per curiam) (right extends to hearing on motion to dismiss); *Reinert v. Larkins,* 379 F.3d 76, 95 (3d Cir.2004) (rejecting the defendant's contention that counsel was ineffective because counsel did not inform him of his right to testify at a suppression hearing without analyzing whether the defendant did in fact have such a right).

¶ 33 In *Rock,* the Supreme Court noted, in dictum, that "[the] right [to testify] reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify." 483 U.S. at 51 n. 9, 107 S.Ct. 2704. However, the cases the *Rock* Court cited for this proposition concerned only proceedings in which a person's liberty or similarly important interest was actually at stake. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits); *see also Gill v. Ayers,* 342 F.3d 911, 920–21 (9th Cir.2003) ("three strikes" sentencing hearing); *People v. Allen,* 973 P.2d 620, 622 (Colo.1999) (under *Rock,* "procedural due process rights include a defendant's right to

testify in some extrajudicial proceedings like probation and parole revocation"). As noted, no such interest is at stake in a suppression hearing. Therefore, we are not persuaded by the cases assuming the existence of the right defendant asserts.

¶ 34 Nor are we persuaded by the cases on which defendant relies. *See Ferguson v. State,* 926 So.2d 469 (Fla.Dist.Ct.App.2006); *State v. Williams,* 137 Wash.2d 746, 975 P.2d 963 (1999).

¶ 35 The court in *Ferguson* held that the trial court should have determined whether the defendant had waived his right to testify at a suppression hearing. The court appears to have assumed that his counsel could not make that decision. 926 So.2d at 472. The opinion does not include any analysis, and, to the extent it is inconsistent with our resolution of this issue, we decline to follow it.

¶ 36 *Williams* involved a Washington rule of criminal procedure requiring the court to inform the defendant of his right to testify at the suppression hearing, a rule for which there is no equivalent in Colorado. 975 P.2d at 965–66. Moreover, the *Williams* court expressly found that the violation of the rule was not a constitutional violation. *Id.* at 964, 966.

■■■ ¶ 37 Because the decision whether to allow defendant to testify at the pretrial suppression hearing was a tactical decision for counsel to make, we conclude that the district court did not err in finding that defendant had failed to establish good cause warranting substitution of counsel on this basis.

### B. Appointment of Advisory Counsel

¶ 38 Defendant also contends that the district court erred by ·(1) declining to continue the first trial and appoint advisory counsel to represent him; and (2) failing to advise him that it could appoint advisory counsel to represent him in the second trial. Both contentions, however, are premised on his assertion that his waiver of the right to counsel was ineffective. Because we have concluded that

his waiver was effective, we reject these contentions.[3]

### C. Denial of Motion to Suppress

¶ 39 Defendant contends that the district court erred by admitting wiretapped phone conversations and cell phone records because the search warrants therefor were based primarily on stale information. Essentially, he asserts that the court erred by concluding that the warrants were issued based on allegations establishing probable cause. We are not persuaded.

¶ 40 The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit the issuance of a search warrant absent probable cause. *People v. Miller*, 75 P.3d 1108, 1112 (Colo.2003). Probable cause exists where the search warrant affidavit alleges sufficient facts that a person of reasonable caution would believe that evidence of criminal activity is located at the place to be searched. *Id.; People v. Nelson*, 2012 COA 37, ¶ 43, 296 P.3d 177, 2012 WL 865388. More specifically, the affidavit must demonstrate that the "evidence of criminal activity is located in the place to be searched at the time of the warrant application, not merely some time in the past." *Miller*, 75 P.3d at 1112; *accord People v. Hoffman*, 293 P.3d 1, 7 (Colo.App.2010) (*cert. granted* Feb. 7, 2011).

¶ 41 In determining whether probable cause exists, a court must consider the totality of the circumstances. *Miller*, 75 P.3d at 1113. Whether the information is stale is an important consideration. *Id.; People v. Mapps*, 231 P.3d 5, 8 (Colo.App.2009). However, information's staleness "is not simply a question of the passage of time." *People v. Crippen*, 223 P.3d 114, 118 (Colo.2010); *see also Mapps*, 231 P.3d at 8 ("The lapse of time between commission of an offense and the execution of a warrant . . . is not deter-minative of the staleness of information."). And "[t]ime becomes less significant in the wiretap context, because the evidence sought to be seized is not a tangible object easily destroyed or removed.... Therefore, when police describe telephone activity occurring over an extended period of time, the stale information issue should be construed less rigorously." *United States v. Domme*, 753 F.2d 950, 953 (11th Cir.1985) (citation omitted); *see also United States v. Degaule*, 797 F.Supp.2d 1332, 1356 (N.D.Ga.2011).

¶ 42 Generally, appellate review of a district court's ruling on a suppression motion presents a mixed question of law and fact. We defer to the court's findings of fact if the record supports them, but we review the court's legal conclusions de novo. *People v. Glick*, 250 P.3d 578, 582 (Colo.2011). However, " '[a] court reviewing the validity of a search warrant does not engage in de novo review but rather examines whether the magistrate had a substantial basis for concluding that probable cause existed.' " *Hoffman*, 293 P.3d at 5 (quoting *People v. Pacheco*, 175 P.3d 91, 94 (Colo.2006)). In analyzing whether a search warrant was valid, an appellate court generally defers to the magistrate's determination. *People v. Gutierrez*, 222 P.3d 925, 937 (Colo.2009); *Hoffman*, 293 P.3d at 5–6.

¶ 43 Almost five years after P.E. was murdered, police applied for search warrants for defendant's, C.A.'s, and B.G.'s cell phone records and for wiretaps on their phones. The affidavits supporting the warrants alleged numerous facts that the police had discovered around the time of the murder suggesting that defendant, C.A., and B.G. were involved. One such fact was that when police searched defendant's residence, they discovered a backpack belonging to P.E.

¶ 44 In addition, the affidavits alleged the following more recently discovered facts:

---

3. We reject defendant's suggestion that, by conditionally offering to appoint advisory counsel to represent him before the first trial, the district court "tacitly acknowledged" that he had a conflict of interest with the public defenders. After making the offer, the court reiterated that it had found that there was no conflict and that it "continue[d] to find, that [defendant] made a knowing, voluntary, and intelligent decision to represent himself." *Cf. People v. Downey*, 994 P.2d 452, 454 (Colo.App.1999) ("[A] defendant who elects self-representation has no right to the appointment of advisory counsel. The decision to appoint such counsel . . . rests within the trial court's sound discretion."), *aff'd*, 25 P.3d 1200 (Colo.2001).

- ten months before applying for the warrants, police found defendant's fingerprints on the backpack's contents;
- nine months before, C.A. had told police that he was best friends with B.G. and defendant, he was in constant phone contact with B.G., and he had talked to defendant's girlfriend the previous day;
- a few weeks before, police had confirmed C.A.'s and B.G.'s current phone numbers, and had identified what they believed to be defendant's current phone number by calling the number and hanging up when a man answered, "Hello this is Ryan";
- B.G. had called defendant's alleged phone number three months before; and
- phone records established that C.A. and B.G. called each other frequently.

¶ 45 In the wiretap affidavit, the affiant noted that in the next few weeks he would be executing orders on defendant and B.G. allowing him to obtain biological samples from them and would be interviewing people who knew C.A. and B.G. about the murder. The affiant also said that he "reasonably believed that the named interceptees will communicate with each other during this time frame."

¶ 46 We perceive no error in the district court's conclusion that the affidavits established probable cause. Though police discovered many of the alleged facts around the time of the murder, they had only identified defendant's fingerprints ten months before, at which point they began to investigate defendant's, C.A.'s, and B.G.'s phone numbers and records.

¶ 47 Defendant asserts that the fingerprint information was stale because the police recovered the backpack contents containing his fingerprints from his residence around the time of the murder or, alternatively, because there was a ten-month delay between identifying the fingerprints and applying for the warrants. But the search warrants were for phone records and wiretaps, not for tangible evidence that could have been destroyed or removed since the murder. *See Domme,* 753 F.2d at 953; *Degaule,* 797 F.Supp.2d at

1356; *cf. Crippen,* 223 P.3d at 118–19 (because business records are normally maintained for a long period of time, and not immediately destroyed, a records audit that was several years old was sufficient to establish probable cause because "there was every reason to believe the items for which the search was judicially authorized would still be in the place to be searched"). And it was reasonable for investigators to believe that defendant, C.A., and B.G. would soon be communicating about the murder because the investigators were about to obtain biological samples from defendant and B.G. and interview people in relation to the case.

¶ 48 Consequently, we conclude that the affidavits alleged sufficient facts that a person of reasonable caution would believe that communications about the murder would soon take place on the phones for which records and wiretaps were being sought.

### D. Prosecutorial Misconduct

¶ 49 Defendant contends that the district court abused its discretion by allowing the prosecutor to (1) remark during voir dire and opening statement that C.A. would not be testifying for legal reasons, thereby allegedly alluding to C.A.'s assertion of his constitutional privilege against self-incrimination [4]; and (2) suggest during voir dire that an attorney's examination of witnesses is more trustworthy than a pro se defendant's. We are not persuaded by either contention.

¶ 50 In determining whether prosecutorial misconduct has occurred, " '[t]he context in which [the] challenged prosecutorial remarks are made is significant.' " *People v. Santana,* 255 P.3d 1126, 1133 n. 5 (Colo.2011) (ultimately quoting *Harris v. People,* 888 P.2d 259, 266 (Colo. 1995)). A prosecutor engages in prosecutorial misconduct during voir dire when she misstates the law or " 'intentionally use[s] the voir dire to present factual matter which the prosecutor knows will not be admissible at trial or to argue the prosecution's case to the

---

**4.** Defendant frames this issue as one of both evidentiary error and prosecutorial misconduct. However, no witness invoked the privilege against self-incrimination while testifying, nor

did the prosecutor refer to that privilege in the context of eliciting testimony. Consequently, we treat the contention as a claim of prosecutorial misconduct, not evidentiary error.

jury.' " *People v. Adams,* 708 P.2d 813, 815 (Colo.App.1985) (emphasis removed) (quoting ABA, *Standards for Criminal Justice* 3–5.3(c) (2d ed. 1980)). Similarly, while a prosecutor has considerable latitude in choosing what language and rhetorical style to employ during argument to the jury, *see People v. Robles,* —— P.3d ——, ——, 2011 WL 1195773 (Colo.App.2011) *(cert. granted* Sept. 12, 2011); *People v. Villa,* 240 P.3d 343, 358 (Colo.App.2009), a prosecutor may not, for example, misstate the evidence or the law, attempt to inflame the jurors' passions or prejudices, or offer a personal opinion as to the defendant's guilt. *Domingo–Gomez v. People,* 125 P.3d 1043, 1050 (Colo.2005); *Robles,* —— P.3d at ——.

▮ ¶ 51 We review the district court's determination whether a prosecutor engaged in misconduct for an abuse of discretion. *People v. Strock,* 252 P.3d 1148, 1152 (Colo. App.2010); *People v. Collins,* 250 P.3d 668, 678 (Colo.App.2010). We will not disturb the court's ruling absent a showing of a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Moody,* 676 P.2d 691, 697 (Colo.1984); *Strock,* 252 P.3d at 1152.

1. References to C.A. Not Testifying

¶ 52 During voir dire in the second trial, the prosecutor asked:

In this case . . . you had heard a little bit about the three participants, and I talked to you about one who is going to testify. The third participant I expect you will not hear from at all . . . Is there anybody who's going to . . . hold that against the People . . . ? Can everybody keep it out of their mind that it's irrelevant as to what happened with that third participant? . . . . Is that gonna cause anybody any concern?

One juror indicated that it would cause him concern. After reiterating that "what happened with that person is not relevant to this trial," the prosecutor asked whether the juror would still be concerned if he or she knew that the nontestifying participant was "somebody that cannot be made to testify by anybody." At a sidebar conference, defendant objected, asserting that the prosecutor was "basically introducing the fact that [C.A.]

has invoked his Fifth Amendment rights." The district court replied, "I'm not gonna allow any mention of Fifth Amendment. And it's their own perception. I'll give the jury the law."

¶ 53 When voir dire resumed, one juror continued to express concern about the nontestifying participant. The following exchange occurred:

[Prosecutor]: Okay. There's not a lot that I can tell you, but if there's somebody who cannot be made to testify, . . . then nobody can call that person to the witness stand, all right? Does that make sense to you guys? . . . .

Juror No. 11: But if they're a participant, why wouldn't they be forced to testify?

[Prosecutor]: There are certain legal rules and requirements, and there are certain people that I cannot drag, I cannot subpoena, I cannot have arrested and brought in chains and make them take the witness stand.

Juror No. 11: You know they're a participant, and they can't be subpoenaed?

[Prosecutor]: Well, I'm telling you what the law is. There are certain people, okay?

Juror No. 5: Could I say something really quick? You can be as curious as you want, but the law is weird. I mean, there's tons of stuff that make[s] absolutely no sense, and it defies common sense and reasonable thinking, but it is the way it is.

[Prosecutor]: Very good explanation. . . . [Y]eah. That is the way it is, okay?

¶ 54 Later, in her opening statement, the prosecutor told the jury, "[C.A.] will not testify. That's nobody's fault. It's not this defendant's, it's not [C.A.]'s, it not the prosecution's, it's not the Court's. But you will hear his words."

▮ ¶ 55 We first observe that the prosecutor never explicitly referred to C.A.'s privilege against self-incrimination. Though defendant contends that the prosecutor's remarks were a "thinly veiled reference" to the privilege, there is no evidence in the record that any potential juror understood her remarks that way. To the contrary,

juror number 5's statement that "the law is weird ... [and] make[s] absolutely no sense" indicates that he or she was not aware that the prosecutor was referring to C.A.'s Fifth Amendment privilege.

¶ 56 Further, contrary to defendant's contention, the prosecutor did not engage in impermissible burden shifting. None of the prosecutor's remarks suggested that C.A.'s absence required defendant to present more evidence or prove anything. Also, at the beginning of voir dire, the court told the jury,

> The defendant does not have to prove anything. He is presumed innocent.... The burden of proof is on the Prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crimes charged; in other words, the Prosecution must prove its case. [Defendant] does not need to present any evidence. He is not obligated to prove anything.

The court repeated this information before opening statements and while instructing the jury at the close of evidence. *See People v. Cevallos–Acosta,* 140 P.3d 116, 123 (Colo. App.2005) (no plain error where the prosecutor misstated a definition during voir dire but the jury instructions included the correct definition; appellate court presumes the jury followed the instructions).

¶ 57 Therefore, we conclude that the district court did not abuse its discretion by allowing the comments about C.A.

### 2. Trustworthiness of a Pro Se Defendant's Examination of Witnesses

¶ 58 During voir dire in the second trial, the following exchange occurred:

> [Prosecutor]: Questions by lawyers or the defendant are not evidence. Same thing as argument. At the end of the case, we get to argue our case to you, and we get to make an opening statement. None of that is evidence. Do you think that you could follow that, including the questions that the defendant asks?
>
> . . . .
>
> Juror No. 13: Not at all.... I'm not comfortable with it, because absence of evidence doesn't mean that evidence is absent, so, yeah, I have a real big problem with that.
>
> [Prosecutor]: Well, let me ask you. Would you agree that when I ask a question of a witness, I was not there at the scene. I know about the case from what's been presented to me, right, through police reports, that kind of stuff, right? So when I ask a question, it's truly a question of ... basically a third party, right?
>
> Juror No. 13: Yes.
>
> [Prosecutor]: Okay. But would you agree or disagree that if a defendant doesn't have a lawyer, they don't have that extra person asking the question, and they can ask a question however they want, whether it be true or not?
>
> Juror No. 13: Uh-huh.
>
> [Prosecutor]: Okay. Do you guys all understand that?.... [C]ould everybody here in the box first realize that that question is not evidence? What ... that question is, is putting the answer in context. That['s] what the evidence is, is the answer to the question.

Defendant did not object.

¶ 59 Defendant argues that the prosecutor was telling the prospective jurors to hold defendant's examination of witnesses to a higher standard than an attorney's because of his pro se status. *Cf. People v. Sandoval–Candelaria,* —— P.3d ——, ——, 2011 WL 2186433 (Colo.App.2011) ("Remarks made to denigrate defense counsel constitute professional misconduct."). In our view, however, the prosecutor was simply explaining that a question is not evidence, regardless of whether an attorney or a pro se defendant asks it.

¶ 60 Therefore, we conclude that the district court did not abuse its discretion by allowing the prosecutor's remarks.

### E. Evidence of Defendant's Prior Felony Convictions

¶ 61 We reject defendant's contention that the district court abused its discretion by allowing the prosecution to introduce evidence of his prior felony convictions to impeach his statements introduced through cross-examination of B.G.

¶ 62 We review the district court's decision to admit evidence for an abuse of discretion. *People v. Finney*, 2012 COA 38, ¶ 64, —— P.3d ——, 2012 WL 892198.

¶ 63 A defendant who testifies at trial is subject to impeachment by his prior felony convictions. *People v. McKeel*, 246 P.3d 638, 640–41 (Colo.2010). Further, "[w]here a defendant does not testify at trial, but he or she elicits his or her own hearsay statements through another witness, CRE 806 authorizes the jury to hear impeachment evidence that would have been admissible if the defendant had testified" because, in such circumstances, the defendant "is in essence functioning as a witness on his or her own behalf." *People v. Dore*, 997 P.2d 1214, 1219 (Colo.App.1999); *see* CRE 806; *see also United States v. Lawson*, 608 F.2d 1129, 1130 (6th Cir.1979); *Kelly v. State*, 857 So.2d 949, 950 (Fla.Dist.Ct.App.2003); 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 806.04[2][b], at 806–12 (Joseph M. McLaughlin, ed., 2d ed. 2011) ("A defendant who chooses not to testify but who succeeds in getting his or her own exculpatory statements into evidence runs the risk of having those statements impeached by felony convictions.").

¶ 64 As relevant here, defendant cross-examined B.G. as follows:

Q. When you talked to me [after a police officer had shown up at B.G.'s house], do you recall me telling you that I wasn't going to go down for something I didn't do?

A. Yes.

Q. Did you take that to mean that if I was questioned, I would no longer cover for you?

. . . .

Q. Did you take me telling you that I wasn't going to go down for something I didn't do, to mean that if questioned, I was no longer going to cover for you?

A. No.

Q. Is that when you decided that you should retain an attorney and come forward in this case?

A. No.

The prosecutor later moved to introduce evidence of defendant's prior felony convictions to impeach him under *Dore*. Over objection, the district court granted the request and instructed the jury that it could only consider the evidence to evaluate the credibility of defendant's statements to witnesses.

¶ 65 Defendant attempts to distinguish *Dore* on the basis that, in that case, the defendant elicited the hearsay statements by calling a defense witness, whereas here B.G. testified for the prosecution. But even though defendant did not call B.G. as a witness, he nonetheless "succeed[ed] in getting his ... own exculpatory statements into evidence." *Weinstein's Federal Evidence* § 806.04[2][b], at 806–12; *see also Huggins v. State*, 889 So.2d 743, 756 (Fla.2004) (where defense counsel elicited the defendant's hearsay statement through a prosecution witness, the prosecution was entitled to introduce the defendant's felony convictions for impeachment).

¶ 66 Further, contrary to defendant's assertion, the prosecutor did not open the door to the statements by inquiring on direct examination why B.G. had decided to cooperate with the police. Though B.G.'s testimony may have opened the door for defendant to cross-examine him about that decision, it did not open the door for defendant to introduce, without possibility of impeachment, his own exculpatory hearsay statements in doing so. *Cf. People v. Harris*, 43 P.3d 221, 227 (Colo.2002) ("the concept of 'opening the door' represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression"); *People v. Renfro*, 117 P.3d 43, 46 (Colo.App. 2004) (a party opens a door on a topic to the extent the other party must dispel an impression or explain or rebut an adverse inference).

F. Denial of Motions for a Mistrial

¶ 67 Defendant next contends that the district court abused its discretion by denying his motions for a mistrial after (1) his wife testified that she had met him in jail before trial, and (2) two witnesses implied

that he had been tried previously for the murder.[5]   Again, we are not persuaded.

¶ 68 A mistrial is " 'the most drastic of remedies,' " and a motion therefor "should only be granted 'where the prejudice to the accused is too substantial to be remedied by other means.' " *Santana*, 255 P.3d at 1132 (quoting in part *Bloom v. People*, 185 P.3d 797, 807 (Colo.2008)).

¶ 69 We review a district court's denial of a motion for a mistrial asserting nonconstitutional error for an abuse of discretion. *Santana*, 255 P.3d at 1130.   We will not disturb the court's decision absent a clear showing of an abuse of discretion and prejudice to the defendant. *Id.*

1.   Testimony that Defendant's Wife Met Him in Jail Before Trial

¶ 70 On direct examination, the prosecutor asked defendant's wife whether she "had several meetings with the defendant prior to your testimony today recently." She replied, "No. I brought my kids to see him for the first time in six months because the jail won't let them see three kids." The prosecutor then asked whether she had met with defendant on three particular dates. She responded in the affirmative, but did not again refer to defendant's incarceration.

¶ 71 Defendant moved for a mistrial, asserting, as relevant here, that the prosecutor had elicited his wife's testimony about visiting him in jail because the prosecutor had asked about specific dates on which his wife could only have met with him at the jail. The court denied the motion, ruling that, although the prosecutor could have worded the questions differently, she had not elicited the testimony.

¶ 72 We agree with the district court. The prosecutor was attempting to determine how recently and how often defendant had met with his wife. She asked only whether—not where—defendant's wife had met with defen-

dant on the specified dates. *See People v. Haynie*, 826 P.2d 371, 378 (Colo.App.1991) (mistrial unnecessary where the prosecutor did not intentionally solicit the defendant's ex-wife's remark that "[she] met him in jail"). Further, defendant's wife made only a single, brief reference to having met with defendant in jail. *See People v. Lowe*, 184 Colo. 182, 189, 519 P.2d 344, 347–48 (1974) (referring to a defendant's incarceration is not per se prejudicial); *cf. People v. Abbott*, 690 P.2d 1263, 1269 (Colo.1984) (a single, unelicited, nonspecific reference to the defendant's past criminal acts did not require a mistrial).   And defendant declined the court's later offer to give a curative instruction. *Cf. People v. Shreck*, 107 P.3d 1048, 1060 (Colo.App.2004) (denial of mistrial for a single inappropriate remark proper where the defendant declined a curative instruction).

¶ 73 Consequently, we conclude that the court did not abuse its discretion by denying the motion for a mistrial based on defendant's wife's testimony that she had met with him in jail.

2.   Alleged References to the First Trial

¶ 74 During the second trial, two witnesses referred to prior proceedings.

¶ 75 First, when asked how long ago he had seen a photograph of the crime scene, a police lieutenant responded, "Before the first trial.   And, I'm so sorry, I can't even remember when that was." Defendant moved for a mistrial.   The court denied the motion, finding, "The jury is aware that there was a codefendant.   They don't have any idea whether the first trial would have referred to the codefendant or would have referred to [defendant]."

¶ 76 Second, one of the men who dealt drugs with defendant testified as follows:

Q.   You earlier indicated that you testified in another court proceeding in April of 2008, and do you recall also testifying in

---

5.   Defendant also contends that the court erred by failing to give curative instructions immediately after the testimony at issue.   However, though defendant moved to strike his wife's testimony, he did not request curative instructions for her or any of the other witnesses' testimony. Consequently, we perceive no reversible error.

*See People v. Harris*, 892 P.2d 378, 382 (Colo. App.1994) (where a defendant does not request a contemporaneous limiting instruction, the failure to give such an instruction sua sponte is not plain error); *see also People v. Griffin*, 224 P.3d 292, 298–99 (Colo.App.2009) (same; collecting cases).

another court proceeding regarding this in the end of January, beginning in February 2008? . . . . Do you remember testifying on those two different dates?

A. For [C.A.]?

. . . .

Q. You don't recall testifying two different times in this court proceeding?

A. Oh, in this one for [defendant]? Yes.

When defendant later moved for a mistrial, the court also denied that motion.

¶ 77 Neither witness testified that defendant had been previously tried for the charges then at issue. Both references were cryptic in that regard. And the references were but momentary remarks in a lengthy trial. Thus, the drastic remedy of a mistrial was not warranted. *See People v. Fears,* 962 P.2d 272, 281 (Colo.App.1997) (witness's inadvertent reference to a prior trial on the underlying charges did not warrant a mistrial); *cf. Salas v. People,* 177 Colo. 264, 266, 493 P.2d 1356, 1357 (1972) (mistrial necessary where witness testified that the defendant had been previously convicted of the charges because "[i]t is possible that the jury's knowledge that another group of citizens in the same community had agreed that [the defendant] was guilty of the same crime could have affected [its] decision").

### G. Cumulative Error

¶ 78 Lastly, defendant contends that the errors he has alleged on appeal amount to cumulative reversible error. Because we have concluded that there were no errors, we reject this contention. *See People v. Reynolds,* 252 P.3d 1128, 1134 (Colo.App.2010).

### III. C.A.R. Noncompliance

¶ 79 Defendant's opening brief does not comply fully with C.A.R. 32 and the People's answer brief does not comply fully with C.A.R. 28.

¶ 80 Defendant's opening brief employs a nonroman style font, and the font for the footnotes is too small. *See* C.A.R. 32(a)(1)(2).

¶ 81 The People's answer brief does not include a summary of the argument. *See* C.A.R. 28(a)(4), (b).

¶ 82 We remind counsel of their obligation to comply with this court's appellate rules. These rules are "not mere technicalities, but facilitate our appellate review." *In re Marriage of Parr,* 240 P.3d 509, 513 (Colo.App. 2010).

¶ 83 The judgment is affirmed.

Judge CASEBOLT and Judge HAWTHORNE concur.