NO. 4-03-0315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

           Plaintiff-Appellee,

           v.

JESSE JAMES,

           Defendant-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Champaign County

  No. 00CF2025

  Honorable

  Thomas J. Difanis,

  Judge Presiding.

______________________________________________________________

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In N
ovember 2000, a grand jury indicted defendant, Jesse James, with attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2000)) and aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2000)).  After a February 2003 trial, a jury found defendant guilty of both charges.  At a joint hearing in April 2003, the trial court denied defendant's posttrial motion and sentenced him to consecutive terms of 30 years' imprisonment for attempt (first degree murder) and 7 years' imprisonment for aggravated domestic battery.  The court later denied defendant's motion to reduce his sentence.

Defendant appeals, asserting (1) a 
per
 
se
 conflict existed between his trial counsel and himself due to his spitting on and punching counsel, (2) his conviction and sentence for aggravated domestic battery must be vacated under the one-act, one-crime rule, and (3) his case should be remanded for an inquiry into his posttrial ineffective-assistance-of-trial-counsel allegation.  We affirm in part and vacate in part.

I. BACKGROUND

Defendant arranged to take Lavon Aker, the mother of his son, to work on the morning of November 9, 2000.  When he arrived at her house that morning, he asked for a glass of water, and she went into her home to get one.  He followed her into the home, shut the front door, and attacked her with a knife.  In all, defendant stabbed Aker three times in the neck, three times in the stomach, once in the chest, once in the breast, once in the back, once in each arm, and once in each leg.  Four of her fingers were also cut when she attempted to defend herself.

The police arrested defendant that same day, and the State charged him with attempt (first degree murder) and aggravated domestic battery.  On November 17, 2000, the trial court found defendant unfit to stand trial.  On November 30, 2000, a grand jury indicted defendant with the same two charges.  Both indictments stated defendant "repeatedly stabbed Lavon Aker with a knife."   

On July 16, 2001, the trial court found defendant was fit to stand trial.  On August 30, 2001, the court found defendant was unfit to stand trial.  On November 27, 2001, the court found defendant remained unfit to stand trial.  

On March 14, 2002, defendant's court-appointed counsel, John Taylor, sent defendant a letter, informing him that Taylor would hand deliver discovery materials to defendant when defendant returned to the county jail.  In a letter dated March 22, 2002, defendant complained to Champaign County Judge John Townsend about Taylor's failure to provide him with discovery materials.  In a March 28, 2002, letter, Judge Townsend informed defendant that defense counsel possessed "the tactical discretion" as to whether defendant should be provided with discovery materials.  

On June 4, 2002, the trial court found defendant was fit to stand trial.  In July 2002, the court held a hearing on defendant's motion to continue, at which defendant was present by video transmission from the county jail.  During the hearing, defendant twice called Taylor a "cocksucker" and instructed the judge to tell Taylor to get his discovery and motions to him.  On August 20, 2002, the court again found defendant unfit to stand trial.  

On December 12, 2002, the trial court found defendant was fit for trial.  On February 13, 2003, the court began defendant's trial by noting defendant had spit on Taylor that morning when they were talking about the case.  The court asked Taylor if "in any way, shape, or form" the incident would affect his representation of defendant, and Taylor responded "[n]ot in one bit."  The court allowed Taylor to remain as counsel, and attorney Bruce Ratcliffe, who was to take over Taylor's caseload, also appeared on defendant's behalf.  

The trial court then brought defendant into the courtroom and admonished him that he could forfeit the right to be present at his trial if he chose to be disruptive.  Defendant then called the trial judge names but was allowed to stay in the courtroom after he promised to behave.  During the State's opening statement, defendant struck Taylor.  Officers wrestled defendant to the floor and removed him from the courtroom.  The court declared a mistrial based on the incident.  

The next day, the court offered Taylor leave to withdraw as defendant's counsel.  Taylor declined, stating he bore no ill will toward defendant.  Taylor also indicated he had asked the State's Attorney not to prosecute defendant and would not voluntarily be a witness against defendant.  In Taylor's opinion, defendant struck him to obtain a mistrial.  The State objected to Taylor remaining as counsel because it feared the case would be overturned on appeal due to a conflict of interest.  The court overruled the State's objection, noting it believed Taylor would provide the same defense as he would to anyone else and agreeing with Taylor that defendant was trying to obtain a mistrial.  

The trial court then proceeded with defendant's trial before a new jury.  The State argued defendant repeatedly stabbed Aker with the intent to kill her.  Aker testified that defendant stabbed her numerous times.  Defense counsel argued defendant did not intend to kill Aker and conceded defendant's guilt as to the aggravated-domestic-battery charge.  Defendant testified on his own behalf.  He stated he was Jesus and that Jesse was in heaven.  He denied knowing Aker.  The jury found defendant guilty as charged.

On February 19, 2003, defense counsel filed a posttrial motion, asserting the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

On April 1, 2003, the State charged defendant with three counts of aggravated battery (720 ILCS 5/12-4(b)(8) (West 2002)) based on defendant's actions against Taylor on February 13, 2003.  That same day, the trial court held a joint hearing on defendant's posttrial motion and sentencing.  Defendant gave a statement of allocution, during which he presented the court with Taylor's March 14, 2002, letter.  The court denied defendant's posttrial motion and sentenced him to consecutive terms of 30 years' imprisonment for attempt (first degree murder) and 7 years' imprisonment for aggravated domestic battery.  Defendant then filed a motion to reduce his sentence, which the court denied.  This appeal followed.

II. ANALYSIS

A. 
Per
 
Se
 Conflict

Defendant asserts a 
per
 
se
 conflict existed between Taylor and himself because he spit on and struck Taylor before his trial.  We review 
de
 
novo
 whether a 
per
 
se
 conflict exists. 
People v. Morales
, 209 Ill. 2d 340, 345, 808 N.E.2d 510, 512-13 (2004). 

A defendant's sixth-amendment right to effective assistance of counsel includes the right to conflict-free representation.  With a 
per
 
se
 conflict, the defendant does not need to show his or her attorney's actual performance was affected by the conflict's existence, and thus a 
per
 
se
 conflict is grounds for reversal unless the defendant waived his or her right to conflict-free counsel.  
Morales
, 209 Ill. 2d at 345, 808 N.E.2d at 513.  Our supreme court has found a 
per
 
se
 conflict exists when defense counsel (1) had a contemporaneous relationship with the victim, the prosecution, or an entity assisting the prosecution; (2) contemporaneously represented a prosecution witness; and (3) was a former prosecutor who had been personally involved in the defendant's prosecution.  
Morales
, 209 Ill. 2d at 345-46, 808 N.E.2d at 513.

The facts of this case do not fall into one of the aforementioned categories, and defendant does not cite any Illinois cases finding a 
per
 
se
 conflict exists after a defendant attacks his counsel.  In support of his argument, defendant cites the Ohio Supreme Court case of 
State v. Williams
, 99 Ohio St. 3d 493, 794 N.E.2d 27 (2003).  

The 
Williams
 court found the trial court abused its discretion in denying the defendant's attorneys' motion to withdraw as counsel, after the defendant had punched one of them when his guilty verdict was returned.  
Williams
, 99 Ohio St. 3d at 512-13, 794 N.E.2d at 49-50.  There, the attorney who was punched admitted he was afraid of the defendant and acknowledged his relationship with the defendant had "'eroded.'"  
Williams
, 99 Ohio St. 3d at 512, 794 N.E.2d at 49.  Further, both defense attorneys indicated they could not continue to fulfill their professional obligation to their client, and the record showed the incident had begun to diminish their effectiveness.  
Williams
, 99 Ohio St. 3d at 513, 794 N.E.2d at 50.

This case is distinguishable from 
Williams
.  Here, Taylor did not seek to withdraw as counsel and refused to do so voluntarily.  Unlike the attorneys in 
Williams
, Taylor felt the two incidents would have no impact on his representation of defendant.  Moreover, Taylor stated he had no ill feelings toward defendant and requested the State not to file charges against defendant for the attacks.  

Additionally, both Taylor and the trial court felt defendant's actions were attempts to obtain a mistrial.  The 
Williams
 court expressly stated a defendant's deliberately manipulative behavior would require a different analysis.  
Williams
, 99 Ohio St. 3d at 513 n.2, 794 N.E.2d at 50 n.2.  Such analysis took place in 
Commonwealth v. Lester
, 554 Pa. 644, 660, 722 A.2d 997, 1004 (1998), 
overruled
 
on
 
other
 
grounds
 
as
 
recognized
 
by
 
Commonwealth v. Freeman
, 573 Pa. 532, 574, 827 A.2d 385, 410 (2003), where the Pennsylvania Supreme Court affirmed a trial court's denial of a defense counsel's motion to withdraw after the defendant had punched counsel.  There, the defendant had a history of "obstreperous behavior," and the court feared the defendant's actions would be repeated "
ad
 
infinitum
."  
Lester
, 554 Pa. at 660, 722 A.2d at 1004. 

In this case, Taylor and the trial court's belief defendant attacked Taylor to obtain a mistrial is supported by the record.  Taylor did not take the attacks personally and held no ill will against defendant because of the attacks.  To find a 
per
 
se
 conflict exists anytime a defendant physically attacks his counsel would encourage defendants to attack their defense counsel to obtain new counsel or to prevent the State from trying them.  See, 
e.g.
, 
Lester
, 554 Pa. at 660, 722 A.2d at 1004 (where after the defendant's first counsel was removed due to the defendant's lawsuit against him, the defendant filed a lawsuit against his second counsel and punched him).  We refuse to adopt such a rule.  

This case is similar to ones in which the defendant has filed a complaint with the Attorney Registration and Discipline Committee against his trial counsel.  In that situation, Illinois courts have refused to find a 
per
 
se
 conflict, noting such a rule would lead to frivolous appeals and provide a reason for defendants not to fully cooperate with court-appointed trial counsel.  See 
People v. Gardner
, 47 Ill. App. 3d 529, 534, 362 N.E.2d 14, 18 (1977); see also 
People v. Carroll
, 260 Ill. App. 3d 319, 338-39, 631 N.E.2d 1155, 1167-68 (1992).  Illinois courts have also refused to find a 
per
 
se
 conflict when a defendant files a lawsuit against his counsel.  See 
People v. Massa
, 271 Ill. App. 3d 75, 82-83, 648 N.E.2d 123, 128-29 (1995).

 Accordingly, we find defendant has not established a 
per
 
se
 conflict based on defendant's spitting on and punching Taylor.

In the alternative, defendant contends a 
per
 
se
 conflict existed when the State filed charges against him based on his attacks against Taylor.  The actual filing of charges does not change our analysis.  Like a defendant who files a case against his counsel, the State's pending charges may lead to a conflict of interest but is not a conflict 
per
 
se
.  See 
Massa
, 271 Ill. App. 3d at 83, 648 N.E.2d at 129.

B. One-Act, One-Crime Rule

Defendant next asserts his conviction for aggravated domestic battery must be vacated under the one-act, one-crime rule set forth in 
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).  Defendant acknowledges he failed to raise this issue in the trial court but asserts the violation constitutes plain error.  See 
People v. Harvey
, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004).  The State agrees with defendant on both contentions.   

Under the one-act, one-crime rule, a defendant cannot be convicted of multiple offenses when those offenses are all based on precisely the same physical act.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844.  However, if more than one offense arises from a series of incidental or closely related acts and the offenses are not lesser-included offenses, then the defendant can be convicted of multiple offenses.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 845.  

In 
People v. Crespo
, 203 Ill. 2d 335, 342-43, 788 N.E.2d 1117, 1121 (2001), our supreme court looked to the State's indictment to analyze whether the one-act, one-crime rule was violated.  There, the court recognized each of the victim's stab wounds could support a separate offense
, but the State did not charge the defendant or argue the separate acts of stabbing individually constituted different crimes.  
Crespo
, 203 Ill. 2d at 342, 788 N.E.2d at 1121.  The 
Crespo
 court concluded an indictment must indicate the State's intent to treat the defendant's conduct as multiple acts for multiple convictions to be sustained.  
Crespo
, 203 Ill. 2d at 345, 788 N.E.2d at 1123.

Here, as in 
Crespo
, defendant committed a series of closely related but separate acts when he stabbed Aker, and the State used language in the indictment that did not treat each stab as the basis of a separate crime.  Since the State failed to charge defendant's actions as multiple acts, his convictions for both aggravated domestic battery and attempt (first degree murder) cannot be sustained.  Thus, we vacate defendant's conviction and sentence for aggravated domestic battery, which is the less serious offense.  See 
People v. Lee
, 213 Ill. 2d 218, 226-27, 821 N.E.2d 307, 312 (2004) (under the one-act, one-crime rule, the less serious offense must be vacated).

C. Ineffective Assistance of Counsel

Defendant last contends his case must be remanded because the trial court failed to make an adequate inquiry into his 
pro
 
se
 ineffective-assistance-of-counsel allegation.  We disagree.

When a defendant raises 
pro
 
se
 a posttrial ineffective-assistance-of-counsel claim, the trial court may, when warranted, appoint new counsel to assist the defendant with presenting his claim.  
People v. Pope
, 284 Ill. App. 3d 330, 333, 672 N.E.2d 65, 67 (1996); 
People v. Krankel
, 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049 (1984).  Thus, when a defendant asserts such a claim, the court must first conduct an "adequate inquiry" to determine the factual basis for the claim.  
People v. Johnson
, 159 Ill. 2d 97, 125, 636 N.E.2d 485, 497 (1994).  If the court concludes the claim lacks merit or pertains only to matters of trial strategy, then new counsel is unnecessary.  However, if the inquiry indicates trial counsel's possible neglect of the case, then the court should appoint new counsel.  
Pope
, 284 Ill. App. 3d at 333, 672 N.E.2d at 67.

Here, during defendant's allocution statement, he presented the March 2002 letter from Taylor, in which Taylor stated he would provide defendant discovery materials when defendant returned to jail.  Defendant then argued Taylor never provided him with the discovery materials.  The trial court stated it would place the letter in the court file so this court could see it, and defendant indicated that is what he wanted.  Defendant did not file a 
pro
 
se
 posttrial motion or request the appointment of new counsel.

We begin by noting defendant raised Taylor's failure to give him discovery material before trial, and the trial court responded by noting whether to give defendant discovery materials was a matter within the trial counsel's discretion.  Thus, the court did examine defendant's allegation and remand is unnecessary.  Even if the pretrial examination of defendant's claim was insufficient, the facts of this case still do not warrant remand. 

In similar cases, this court has questioned whether a defendant has even adequately raised an ineffective-assistance-of-counsel allegation to warrant an investigation.  See 
Pope
, 284 Ill. App. 3d at 334, 672 N.E.2d at 68 (where the defendant did not file a posttrial motion or ask for new counsel).  There, we held that when a trial court simply becomes aware that a defendant has criticized counsel's performance, the court has no duty to investigate the defendant's claim if it is patently without merit or unsupported by specific factual allegations or in other words, if it would be summarily dismissed during the first stage of a postconviction proceeding.  
Pope
, 284 Ill. App. 3d at 334, 672 N.E.2d at 68.

This court has concluded a "[t]rial counsel's decision whether to provide his client with discovery materials constitutes a matter of trial strategy and judgment that ultimately lies within counsel's discretion."  
People v. Davison
, 292 Ill. App. 3d 981, 988-89, 686 N.E.2d 1231, 1236 (1997).  Thus, a trial court properly dismisses a postconviction petition at the first stage when a defendant's ineffective-assistance-of-counsel claim is based on counsel's failure to provide the defendant with discovery materials.  See 
Davison
, 292 Ill. App. 3d at 984, 988-91, 686 N.E.2d at 1233, 1235-37.  In reaching our holding in 
Davison
, 292 Ill. App. 3d at 988, 686 N.E.2d at 1235, we expressly disagreed with the First District's 
People v. Smith
, 268 Ill. App. 3d 574, 579-80, 645 N.E.2d 313, 317-18 (1994), where it found a postconviction petitioner was entitled to an evidentiary hearing on his claim that his trial counsel did not permit him to read the discovery materials.

Defendant asks us to reconsider 
Davison
 or limit its holding to postconviction petitions.  We decline to do so.    
Davison
 held the defendant does not have a constitutional right to read discovery materials (
Davison
, 292 Ill. App. 3d at 990, 686 N.E.2d at 1236), which clearly applies to all ineffective-assistance-of-counsel claims whenever they are raised.  Moreover, 
while the 
Davison
 court did point out some difficulties in adjudicating such a claim in a postconviction proceeding, the court also noted problems with the application of the 
Smith
 case in general.  See 
Davison
, 292 Ill. App. 3d at 989, 686 N.E.2d at 1236.

Accordingly, we find defendant's claim is patently without merit, and thus further investigation by the trial court was not required.

III. CONCLUSION

For the reasons stated, we vacate defendant's conviction and sentence for aggravated domestic battery and affirm the trial court's judgment in all other respects.

Affirmed in part; vacated in part.

APPLETON and MYERSCOUGH, JJ., concur.