2020 IL App (1st) 173119
No. 1-17-3119

SECOND DIVISION
September 29, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12CR3075 |
| | ) | |
| KENNETH RHODES, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Alfredo Maldonado, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and
opinion.

**OPINION**

¶ 1     Following a jury trial, defendant Kenneth Rhodes was convicted of first degree murder and

was sentenced to life imprisonment. On appeal, defendant seeks reversal of his conviction and the

sentence imposed thereon, arguing that his trial attorneys labored under a *per se* conflict of interest

and that he was thus deprived of his constitutionally protected right to conflict-free counsel. For

the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3     On January 13, 2012, Pauline Betts-Bracy and Nathaniel Bracy were shot and killed in

their home. Defendant, Betts-Bracy's brother, was subsequently arrested and charged with

multiple counts of first degree murder and attorneys from the Cook County Public Defender's Office were appointed to represent him. Assistant Public Defender (APD) Ed Koziboski first appeared on behalf of defendant in March 2012. Over the years, he filed various pleadings and litigated various pretrial motions on defendant's behalf, including answers to discovery, motions to exclude DNA and serology evidence, and motions *in limine*. On multiple occasions, APD Koziboski was assisted by other APDs including APD William Bolan. On January 9, 2017, during the course of their representation of defendant and approximately six weeks before the case was set for trial, APDs Koziboski and Bolan were present when defendant purportedly struck a sheriff's deputy while in custody, which led to their client being charged with the offense of aggravated battery to a peace officer.

¶ 4 Thereafter, on March 20, 2017, APDs Koziboski and Bolan filed a motion seeking to withdraw as defendant's counsel. In the motion, they alleged that their continued representation of defendant was impaired by a conflict of interest, citing their presence during the alleged altercation between defendant and the sheriff's deputy and their status as "potential witnesses." Specifically, they argued:

> "A conflict of interest exists where the attorneys representing a client's best interest in [a] matter are compelled to bear witness against that client in another matter, and potentially testify to his detriment. Illinois Rules of Professional Conduct of 2010 address the issue of attorneys playing a dual role as advocate and witness and provide that 'Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.' "[1]

---

[1] Rule 3.7 of the Illinois Rules of Professional Conduct of 2010 addresses the issue of a lawyer as a witness and provides as follows:

See Ill. R. Prof'l Conduct (2010) R. 37 cmt. 1 (eff. Jan. 1, 2010). Although the motion set forth the factual basis for the purported conflict of interest, it did not specify whether APDs Koziboski and Bolan believed their continued representation of defendant amounted to an actual conflict of interest or a *per se* conflict of interest.

¶ 5    The State, in turn, filed a response opposing the motion to withdraw. In its response, the State argued that the mere possibility that attorneys Koziboski and Bolan could be called as witnesses in a separate criminal proceeding did not support a finding that their continued representation of defendant in his upcoming murder trial was impaired by an actual or *per se* conflict of interest. Moreover, the State asserted that Rule 3.7 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 3.7 (eff. Jan. 1, 2010)) was inapplicable because it "does not address situations where a defense attorney may be called to testify in *another* matter, only where an attorney may be a necessary witness contemporaneous with his representation." (Emphasis in original.) Accordingly, the State urged the circuit court to deny the motion to withdraw.

¶ 6    The court presided over a hearing on the motion, and after reviewing the parties' filings and hearing the arguments made in support of their respective filings, the court denied defendant's attorneys' motion to withdraw. In doing so, the court found that the mere fact that attorneys Koziboski and Bolan had given interviews and were potential witnesses against defendant in a

---

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Ill. R. Prof'l Conduct (2010) R. 3.7 (eff. Jan. 1, 2010).

separate unelected criminal matter did not give rise to an actual or *per se* conflict of interest. The court reasoned:

"Certainly I don't see that—the fact that Mr. Bolan and Mr. Koziboski were simply present for these alleged actions [against the sheriff's deputy] by [defendant] doesn't in any way create an undivided loyalty by them to defendant, nor does the fact that they would represent [defendant] in this murder case in any way have a possibility of leading to a reversal or even another factor, just the appearance of impropriety here.

I don't see that Rule 3.7 of the Professional Rules of Conduct [is] applicable in this case because I think that rule is—deals with contemporaneous representation and testifying or being a witness in the same matter, not a different matter.

That's what the unelected matter is. It is a completely distinct and separate matter. In fact, I think that having the defense counsel removed from this case would lead to a very real and actual harm to [defendant]. The defense has been on this case since the beginning of this case. This matter is on the eve of trial, and there has been a substantial amount of work done by defense counsel here.

I don't see that there is a potential conflict. The fact that, again, that you were named in a report is just too speculative. There simply is not a potential conflict here that in any way requires defense counsel to be disqualified in this matter. Accordingly, the Defense's motion is denied."

¶ 7        Following the court's denial of defense counsels' motion to withdraw, the cause proceeded to trial.[2] At trial, the State called various witnesses who testified that defendant had been engaged

---

[2]Because defendant does not raise any argument concerning the sufficiency of the evidence or contest any evidentiary rulings, we elect not to detail all the evidence presented at trial; rather, we will simply provide a brief summary of that evidence.

in an ongoing dispute with his sister over ownership of a condominium left to them by their deceased mother. Defendant had made several threats to kill his sister as a result of that dispute and had made a similar threat the morning of the murders when he visited the condo unannounced. Defendant's unannounced visit led his sister to call the police, and Betts-Bracy informed her daughter that she would be seeking an order of protection against her brother. The State also presented ballistics evidence that the bullets recovered from the crime scene and the victims' bodies were fired from a .357 Magnum revolver, a gun linked to defendant. In addition, gunshot residue was found on defendant's jacket and his sister's DNA and blood was detected on his clothing. Defendant's attorneys cross-examined the State's witnesses and called their own forensic DNA expert to testify. Defendant elected not to testify.

¶ 8    Ultimately, after hearing the aforementioned evidence, the jury returned with a verdict finding defendant guilty of the first degree murder of his sister and brother-in-law. At the sentencing hearing that followed, the court sentenced defendant to a mandatory term of life imprisonment. This appeal followed.

¶ 9                                    ANALYSIS

¶ 10    On appeal, defendant contends that the circuit court violated his right to conflict-free counsel when it denied his attorneys' pretrial motion to withdraw as his trial counsel because they were potential witnesses against him in a separate pending criminal case.

¶ 11    The State responds that the circuit court properly denied defendant's attorneys' motion to withdraw because there was no *per se* conflict of interest.

¶ 12    A criminal defendant's constitutional right to effective assistance of counsel encompasses the right to conflict-free representation. *People v. Green*, 2020 IL 125005, ¶ 20; *People v. Peterson*, 2017 IL 120331, ¶ 102. "Conflict-free representation means 'assistance by an attorney

whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations.' " *Green*, 2020 IL 125005, ¶ 20 (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988)). Illinois courts have recognized two categories of conflict of interest: actual conflicts of interest and *per se* conflicts of interest. *Id.*; *People v. Fields*, 2012 IL 112438, ¶ 17.

¶ 13    An actual conflict of interest "generally, if not exclusively, involves joint or multiple representation." *People v. Austin M.*, 2012 IL 111194, ¶ 82. Where there is an actual conflict of interest, a defendant seeking a new trial need not establish that the conflict actually contributed to the conviction; rather, he must simply show that the conflict adversely affected his attorney's trial performance. *Id.* That is, the defendant "must point to some specific defect in his counsel's strategy, tactics, or decision[-]making attributable to the alleged [actual] conflict of interest." *Id.*

¶ 14    In contrast, a "*per se* conflict of interest exists where certain facts about a defense attorney's status, by themselves, engender a disabling conflict," such as when the "attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Fields*, 2012 IL 112438, ¶ 17. Courts have identified three situations where a *per se* conflict will be found to exist: (1) where defense counsel has a prior or contemporaneous relationship with a victim, prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prior prosecution of the defendant. *Green*, 2020 IL 125005, ¶ 24. The justification for recognizing these three categories as *per se* conflicts of interests is that "in each situation, the defense counsel's association or tie to the victim, the prosecution, or a prosecution witness may have subtle or subliminal effects on counsel's performance that are difficult to detect and demonstrate." *Peterson*, 2017 IL 120331, ¶ 103. Because the "very existence of" a *per se* conflict could "inadvertently affect counsel's performance in ways difficult to detect

and demonstrate" and could "lead to the possibility that the attorney would be unnecessarily subject to charges that his representation was less than faithful," there is "no need to show that the attorney's actual performance was affected by existence of the [*per se*] conflict." *People v. Holmes*, 141 Ill. 2d 204, 219 (1990). Accordingly, unless the defendant waives his right to conflict-free representation, the fact that his attorney labored under a *per se* conflict of interest is automatic grounds for reversal. *Fields*, 2012 IL 112438, ¶ 18. Ultimately, "[w]hen deciding whether a *per se* conflict of interest exists, the reviewing court should make a 'realistic appraisal of defense counsel's professional relationship to someone other than the defendant under the circumstances of each case.' " *Austin M.*, 2012 IL 111194, ¶ 83 (quoting *People v. Daly*, 341 Ill. App. 3d 372, 376 (2003)). Where the underlying facts are not in dispute, the issue of whether a *per se* conflict of interest exists is a legal question, which is subject to *de novo* review. *Fields*, 2012 IL 112438, ¶ 19.

¶ 15    Here, defendant does not argue that his trial attorneys' representation was impaired by an actual conflict of interest; rather, citing the first recognized category of *per se* conflicts, he submits that his attorneys' statuses as potential witnesses against him in a separate pending criminal matter constituted "an ongoing 'contemporaneous association' with the State," and thus amounted to a *per se* conflict of interest.

¶ 16    Courts that have found a *per se* conflict of interest based on a defense attorney's "contemporaneous association with the prosecution" have done so in limited situations, such as where the attorney has employment ties to a prosecuting entity at the same time that the attorney is representing the defendant. See, *e.g.*, *People v. Washington*, 101 Ill. 2d 104, 112-13 (1984) (finding a *per se* conflict of interest where defense counsel also served as a part-time prosecutor for the same municipality that was prosecuting the defendant, reasoning that the attorney's duty of

undivided loyalty to the defendant could possibly be affected by his contemporaneous conflicting obligations as both defense attorney and prosecutor); *People v. Fife*, 76 Ill. 2d 418, 424-25 (1979) (finding a *per se* conflict of interest where defense counsel also served as a part-time Assistant Attorney General where he handled unemployment compensation cases for the State, reasoning that defense counsel's performance at the defendant's criminal trial could potentially be "subliminal[ly]" affected by his contemporaneous association with the Attorney General's office). Here, there is no dispute that neither APD Koziboski nor APD Bolan had any employment ties to the state's attorney's office at the time that they represented defendant. Moreover, defendant fails to cite to any case in which a court has found that the mere possibility that a defense attorney could be called as a witness to testify against his or her client in a separate unrelated criminal prosecution constituted a "contemporaneous association" with the prosecution and a *per se* conflict of interest. Indeed, we fail to see how the mere possibility that defendant's trial attorneys could potentially be called to testify as civilian witnesses against defendant in a future unrelated criminal proceeding could impact their professional obligations and loyalty to defendant during their representation of him during his murder trial. Accordingly, we agree with the circuit court's conclusion that no *per se* conflict of interest exited in this case.

¶ 17    In so finding, we are unpersuaded by defendant's reliance on *People v. James*, 362 Ill. App. 3d 250 (2005). In that case, the defendant spit on and struck his attorney in open court during the State's opening argument of his murder trial, which resulted in a mistrial and charges of aggravated battery being filed against him. *Id.* at 252-53. His attorney was then provided with an opportunity to withdraw as the defendant's attorney but declined, informing the court that he bore no ill will toward his client and indicated that he believed that the defendant had only struck him to obtain a mistrial. *Id.* Counsel further informed the court that he did not want the State to file any

additional charges against his client and that he would not voluntarily testify as a witness against him. *Id.* at 253. The court ultimately permitted defense counsel to remain the defendant's attorney over the State's objection, and the cause proceeded to a new trial where the defendant was ultimately convicted of murder. *Id.* On appeal, the defendant sought reversal of his murder conviction, arguing that his attorney labored under a *per se* conflict of interest due to the defendant's prior attack on him. *Id.*

¶ 18     The Fourth District, however, disagreed, finding that the case did not fall within one of the three recognized categories of *per se* conflicts of interests. *Id.* at 254. In addition, the court noted that defendant's attorney indicated that he bore no ill will toward his client and that he would not be a voluntary witness against him; rather, he believed the defendant's actions stemmed from his desire to obtain a mistrial. *Id.* The court likened the case to situations in which courts have refused to find a *per se* conflict when defendants file lawsuits or Attorney Registration and Disciplinary Commission complaints against their attorneys, reasoning that to find a *per se* conflict of interest exists in such situations would simply encourage other defendants to engage in similar conduct to obtain new attorneys and delay the State from trying them. *Id.* at 255. The court further found that the fact that aggravated battery charges had been brought against the defendant did not alter its analysis, stating "the State's pending charges may lead to a conflict of interest but is not a conflict *per se*." *Id.*

¶ 19     Defendant suggests that a different result should be obtained here because his attorneys, unlike the attorney in *James*, did express misgivings about continuing their representation by filing a motion to withdraw as trial counsel. Although this factual distinction exists, we do not find that it warrants a contrary result. The Fourth District's holding in *James* was not based on the defense attorney's subjective feelings about his ability to represent his client and the fact that he had not

filed a motion to withdraw as the defendant's attorney; rather, it was primarily based on its conclusion that the defendant's conduct, which resulted in the possibility that his attorney could potentially be called to provide testimony as the victim of the defendant's battery, did not fall within the three recognized categories in which a *per se* conflict of interest has been found to exist. We agree with the Fourth District's conclusion as well as its concern that recognizing a *per se* conflict in such circumstances could encourage defendants to engage in similar conduct and act violently either toward or in front of their attorneys in an effort to delay their prosecutions.

¶ 20    Accordingly, because we find that defendant's attorneys' statuses as potential witnesses in a possible separate criminal prosecution against their client did not constitute a "contemporaneous association" with the State at the time of defendant's murder trial, we conclude that defendant's attorneys did not labor under a *per se* conflict of interest and that the circuit court did not err in denying their motion to withdraw.

¶ 21                                        CONCLUSION

¶ 22        The judgment of the circuit court is affirmed.

¶ 23        Affirmed.

---

**No. 1-17-3119**

---

| | |
|---|---|
| **Cite as:** | *People v. Rhodes*, 2020 IL App (1st) 173119 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-3075; the Hon. Alfredo Maldonado, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, David H. Iskowich, and Sharon Kanter, Assistant State's Attorneys, of counsel), for the People. |

---