2021 IL App (1st) 192180-U

FIFTH DIVISION
AUGUST 6, 2021

No. 1-19-2180

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 352 |
| | ) | |
| JERRELL MATTHEWS, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment denying the defendant leave to file a successive postconviction petition is reversed because the defendant adequately alleged facts demonstrating cause and prejudice.

¶ 2    On June 20, 2019, the defendant-appellant, Jerrell Matthews, filed a *pro se* motion seeking to file a successive postconviction petition in the circuit court of Cook County. The petition alleged that the defendant had only recently learned that his trial counsel had conflicts of interests which counsel never disclosed to the defendant during his representation and trial. The circuit court denied the defendant leave to file his successive postconviction petition, and the defendant now

appeals. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings.

¶ 3                                    BACKGROUND

¶ 4     In 2007, the defendant was convicted of the first degree murder of Dushawn Shelby and was sentenced to 50 years' imprisonment. On June 20, 2019, the defendant filed a motion for leave to file his second successive postconviction petition, which is the subject of this appeal. This case has a long procedural history, so in the interest of clarity and brevity, we will present only the facts pertinent to resolution of the issues now before us. For a full recitation of facts leading up to the defendant's conviction and sentence, see *People v. Matthews*, 2014 IL App (1st) 121913-U.

¶ 5     In April 2007, the defendant's bench trial commenced for the murder of Dushawn Shelby. The defendant was tried separately from his codefendant Dushawn Bradley.[1] Derrell Wilson, who was also known as Tony Wilson, testified at the defendant's trial. Mr. Wilson claimed that, in September 2004, he routinely sold cocaine at the intersection of 87th and Sangamon Streets in Chicago, and that the defendant and codefendant Bradley also sold cocaine nearby. Mr. Wilson's cousin, Dushawn Shelby (the victim), did not sell drugs, but would sometimes accompany Mr. Wilson while he did. In September 2004, the defendant confronted Mr. Wilson and Mr. Shelby, and warned them not to sell drugs at that location again.

¶ 6     According to Mr. Wilson, a few days later, on September 16, 2004, Mr. Wilson was again selling drugs at the corner of 87th and Sangamon Streets while Mr. Shelby was at a nearby candy store with an individual named Lorenzo Dixon. Mr. Wilson saw codefendant Bradley and someone whom he knew as "Nine–O" wearing gloves and carrying a bag. He assumed that they were

---

[1]Both the victim and the codefendant share the same first name.

carrying guns. Mr. Wilson then went to the candy store, got Mr. Shelby and Mr. Dixon, and all three men walked to 87th and Morgan Streets, where they encountered codefendant Bradley and "Nine–O." Codefendant Bradley pulled a gun out of his pocket, and Mr. Wilson fled while Mr. Shelby ran behind him. As Mr. Wilson and Mr. Shelby entered a nearby alley, the defendant arrived in a red car, pointed a gun at them, and fired five or six shots. Mr. Wilson then ran into a nearby yard. He noticed that Mr. Shelby was no longer behind him and returned to the alley where he saw Mr. Shelby lying on the ground. He also noticed that the defendant was still there.

¶ 7    On July 1, 2005, Mr. Wilson signed a letter in the presence of defense counsel, stating that he did not see the shooter's face or a red car. Mr. Wilson later explained at trial, that the facts contained in the letter were untrue, and that he signed it because "Nine–O" had visited his home a number of times before the trial and offered him $5,000.

¶ 8    The defendant's theory of defense at trial was that he was at a friend's house playing video games when the shooting occurred.

¶ 9    At the close of the trial, the trial court stated that it believed, based on Mr. Wilson's testimony, that the defendant was the person in the red car who committed the shooting. The trial court found the defendant guilty of the first degree murder of Mr. Shelby and sentenced him to 50 years' imprisonment.[2]

¶ 10    On direct appeal, the defendant argued that the trial court denied him a fair trial by improperly admitting evidence of other crimes, specifically, his involvement in drug activity. On September 4, 2009, this court affirmed the defendant's conviction and sentence on direct appeal.

---

[2]Codefendant Bradley was acquitted of all charges in his trial.

See *People v. Matthews*, No. 1–07–2407 (2009) (unpublished order under Supreme Court Rule 23).

¶ 11    On April 23, 2010, the defendant filed a *pro se* postconviction petition alleging ineffective assistance of trial and appellate counsel, as well as insufficiency of the evidence in his conviction. The trial court summarily dismissed the petition, finding it to be frivolous and patently without merit. On June 12, 2012, this court affirmed the trial court's summary dismissal of the defendant's *pro se* postconviction petition. See *People v. Matthews*, 2012 IL App (1st) 102191–U.

¶ 12    On April 23, 2012, the defendant filed a petition pursuant to section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2012)), asserting that Mr. Wilson gave perjured testimony at trial. The trial court dismissed that petition. This court vacated the trial court's dismissal of that petition as premature. *Matthews*, 2014 IL App (1st) 121913–U. The Illinois Supreme Court reversed this court's ruling and affirmed the trial court's dismissal of the defendant's section 2-1401 petition. *People v. Matthews*, 2016 IL 118114.

¶ 13    On February 20, 2013, the defendant filed his first motion for leave to file a successive postconviction petition. He alleged, among other things, that his trial counsel was ineffective for failing to adequately question "Nine–O" in order to undermine Mr. Wilson's testimony. The defendant also argued that counsel should have obtained supporting affidavits from people who witnessed Mr. Wilson's recantation. The trial court denied the defendant leave to file the successive postconviction petition. On June 30, 2017, this court affirmed that judgment. *People v. Matthews*, 2017 IL App (1st) 132055-U.

¶ 14    On June 20, 2019, the defendant filed a *pro se* motion for leave to file another successive postconviction petition, which is the subject of the instant appeal. In his proposed petition attached

to the motion, the defendant alleged that in March 2018, he learned for the first time, from a friend named Rushon Avant, that his trial counsel, Leonard Schultz, had represented codefendant Bradley when he was first interrogated by the police in the murder case which underpins this entire prosecution. The defendant argued this created a conflict of interest in attorney Schultz's representation. In support of his argument, the defendant attached a page from the hearing on codefendant Bradley's motion to suppress his statement. The page was part of a transcript of a hearing in which a Chicago police detective testified that an attorney named "Bud Schultz" (which was the nickname used by Leonard Schultz) had called him on December 6, 2004, after codefendant Bradley had been arrested, to inform the detective that he represented codefendant Bradley.

¶ 15    The defendant further alleged in his petition that in March 2018, he also learned from Mr. Avant that while attorney Schultz was representing the defendant in his murder trial, attorney Schultz was also representing Tarzay Wilson, on an unrelated drug charge. Ms. Wilson is the mother of codefendant Bradley and the cousin of Mr. Shelby, the victim. The defendant claimed that Ms. Wilson was listed as a witness for the State in his murder trial. He pointed out that since attorney Schultz had represented her in a separate drug case during the same time period in which attorney Schultz was defending him, attorney Schultz was in a conflicted position in light of Ms. Wilson being identified as a witness for the State. The defendant attached printouts from the Clerk of the Circuit Court of Cook County's online docketing system, which showed that Ms. Wilson was facing drug possession charges in a separate case that began in May 2003; that she pled guilty to those charges on January 12, 2005; and that she was represented on those charges by attorney Schultz.

¶ 16    The defendant attached an affidavit from Rushon Avant to his petition. In the affidavit, Mr. Avant attested that he had been "represented over the years, before his death, by attorney Leonard 'Bud' Schultz." The affidavit explained that he had been referred to attorney Schultz by the defendant after the defendant's murder trial. The affidavit stated that during a conversation between Mr. Avant and attorney Schultz, the topic of the defendant was raised. The affidavit asserted that during that conversation, attorney Schultz "mentioned" that he had "recently" represented "the cousin of the victim" in the defendant's murder case. (As already noted, the victim in this case, Dushawn Shelby, was a cousin of codefendant Bradley and Ms. Wilson.) Mr. Avant then went to prison for 10 years. After his incarceration, he had a conversation with the defendant and mentioned that attorney Schultz told him he had "represented the victim's cousin." The defendant told Mr. Avant that he had not known that, and "in fact he had filed [an] ineffective assistance of counsel [claim against] his attorneys for not putting Tarzay Wilson[3] on the stand at his trial."

¶ 17    In his petition, the defendant argued that, "[t]he fact that [counsel] Schultz never disclosed this representation of [Ms.] Wilson," who was a named witness for the State in the defendant's case, "raises obvious red flags" and "may account for the reason why [attorney] Schultz did not investigate [Ms.] Wilson or call her as a witness for [the] defense." The defendant explained that 30 minutes after Mr. Shelby was shot and killed, somebody shot codefendant Bradley's brother in retaliation for the shooting of Mr. Shelby. One of the main suspects in that second shooting was Mr. Wilson, who testified against the defendant and who is related to codefendant Bradley and

---

[3]Tarzay Wilson is the mother of the codefendant Bradley.

Ms. Wilson. The defendant claimed that had attorney Schultz not been representing him and Ms. Wilson simultaneously, attorney Schultz likely would have called her and/or codefendant Bradley as witnesses to testify about their family conflicts. The defendant argued this would have supported his theory of defense that codefendant Bradley was the person who shot and killed Mr. Shelby. The defendant therefore averred that attorney Shultz's representation of codefendant Bradley and Ms. Wilson was a conflict of interests. He further pointed out that he was not aware of the conflict until his conversation with Mr. Avant in 2018. He concluded that attorney Schultz's representation of Ms. Wilson, codefendant Bradley, and himself within the same time period rendered attorney Schultz's representation of the defendant ineffective.

¶ 18    On August 9, 2019, the trial court denied the defendant leave to file his successive postconviction petition. In its written order, the trial court noted that Ms. Wilson was never an *actual* witness for the State in the defendant's trial as the State ultimately did not call her to testify although she had been named as one of its witnesses. The trial court concluded that under those circumstances, there could not be a *per se* conflict of interest. The court further stated that "the relationship that [the defendant] alleges to have taken place between [Ms.] Wilson and [attorney] Schultz cannot be described as contemporaneous" because the defendant "never provides an exact or general date of when the representation took place."

¶ 19    The trial court also found that there was no actual conflict regarding Ms. Wilson, noting the defendant's "allegations that there existed a relationship between [Ms.] Wilson and [attorney Schultz] [are] conclusory." Addressing the defendant's assertion that Ms. Wilson could have testified to the "unrelated family conflict," the trial court found that attorney Schultz "not bringing this out at trial is not inherently defective of him" given the evidence presented at trial about the

drug-territory dispute. The trial court stated: "[The defendant] has not tied together how at the time of his trial, his attorney was conflicted by his representation of [Ms. Wilson], and counsel's decisions were attributable to that connection. [The defendant] has not demonstrated an actual conflict of interest exists between the two."

¶ 20    Turning to the defendant's arguments concerning codefendant Bradley, the trial court found that the defendant made "conclusory" statements. The trial court stated that a "conclusory analysis of the relationship between [codefendant] Bradley and attorney [Schultz] would not fit under any of the situations allowed for a *per se* conflict." The trial court also held that, without establishing that a relationship existed between codefendant Bradley and attorney Schultz, beyond what appeared to have been a fleeting representation at an initial interrogation, the defendant could not show an actual conflict of interests.

¶ 21    The trial court noted that the defendant must meet the cause-and-prejudice test in order to advance his successive postconviction petition. The court concluded that while the defendant may be able to establish cause as related to attorney Schultz's representation of Ms. Wilson, since he only recently learned of it, he could not establish prejudice. The trial court additionally noted that the facts which gave rise to the issue pertaining to codefendant Bradley were known to the defendant at the time he filed his first postconviction petition. Therefore, he also could not establish cause to file his successive postconviction petition on that aspect of the issue. The defendant subsequently appealed the trial court's denial of his motion for leave to file a successive postconviction petition.

¶ 22                                    ANALYSIS

¶ 23    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. Rs. 606, 651(a) (eff. July 1, 2017).

¶ 24    The defendant presents the following issue: whether the trial court erred in denying him leave to file his successive postconviction petition. The defendant argues that his petition presented evidence which showed that attorney Schultz labored under two different undisclosed conflicts of interests at the defendant's trial: first, that he represented codefendant Bradley in an interrogation related to the murder in question, during which codefendant Bradley implicated the defendant and showed detectives where to find the defendant in order to arrest him; and second, that attorney Schultz contemporaneously represented Tarzay Wilson in a separate case, knowing that she was the mother of codefendant Bradley, the cousin of the victim Mr. Shelby, and also a named witness for the State in the defendant's trial.

¶ 25    The Act provides a method by which convicted persons under a criminal sentence can assert that their constitutional rights were violated. 725 ILCS 5/122-1 (West 2016); *People v. Allen*, 2019 IL App (1st) 162985, ¶ 29. The Act generally contemplates the filing of only one postconviction petition, and any claim not presented in the initial petition is generally considered forfeited. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 29. However, a court may grant a defendant leave to file a successive postconviction petition if he demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 32. Under this cause-and-prejudice test, a defendant must establish *both* cause and prejudice. *Allen*, 2019 IL App (1st) 162985, ¶ 32. " 'Cause' is established when the defendant shows that 'some objective factor

external to the defense impeded his ability to raise the claim' in his original postconviction proceeding." *Id.* (quoting *People v. Tenner*, 206 Ill. 2d 381, 393 (2002)). And " '[p]rejudice' is established when the defendant shows that the 'claimed constitutional error so infected his trial that the resulting conviction violated due process.' " *Id.* (quoting *Tenner*, 206 Ill. 2d at 393). If the defendant makes a *prima facie* showing of cause and prejudice, the court should grant the defendant leave to file his successive postconviction petition. *People v. Ames*, 2019 IL App (4th) 170569, ¶ 13. At this point in the proceedings, the defendant does not have to prove his allegations, his burden is simply to ensure that they are properly pled. *People v. Smith*, 2014 IL 115946, ¶ 29. We review the trial court's decision to deny leave to file a successive petition *de novo*, accepting all well-pled facts and affidavits as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 26    The basis of the defendant's successive postconviction petition in this case is that his trial counsel labored under conflicts of interests during his representation of the defendant. A criminal defendant's constitutional right to effective assistance of counsel encompasses the right to conflict-free representation, which means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. *People v. Rhodes*, 2020 IL App (1st) 173119, ¶ 12. There are two types of conflicts of interest: actual conflicts of interest and *per se* conflicts of interest. *Id.* An actual conflict of interest generally involves joint or multiple representation and occurs when the conflict adversely affects the attorney's trial performance. *Id.* ¶ 13. Conversely, a *per se* conflict of interest exists automatically in three types of situations: (1) where defense counsel has a prior or contemporaneous relationship with a victim, prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been

personally involved with the prior prosecution of the defendant. *Id.* ¶ 14.

¶ 27 We first review the conflict of interest alleged by the defendant pertaining to codefendant Bradley. As the trial court pointed out, the facts related to attorney Schultz's representation of codefendant Bradley were known to the defendant *at the time he filed his first postconviction petition*. Indeed, the defendant concedes that the document he attached in support of his argument -- the page from the hearing on codefendant Bradley's motion to suppress in which a Chicago police detective testified that an attorney named "Bud Schultz" had called to inform him that he represented codefendant Bradley -- was available to the defendant when he filed his first postconviction petition. He argues, nevertheless, that he may not have realized, at that time, "that his attorney [Leonard Schultz] and Bud Schultz were the same person, even if he had read [the] transcript."

¶ 28 However, the defendant's petition did not provide any *specific explanation or support* for his assertion that he did not know and could not have previously discovered his attorney's dual role. Merely pleading in a speculative manner, that *he may not have realized* that attorney Schultz and Bud Schultz were the same person, is inadequate. See *People v. Blair*, 215 Ill. 2d 427, 453 (2005) (broad, conclusory allegations unsupported by the record are not allowed in postconviction petitions). In fact, the defendant concedes that attorney Schultz referred to himself as "Bud" Schultz the first time he appeared *in the defendant's case*. Essentially, the defendant has not shown *why* he was unable to raise his argument about attorney Schultz representing codefendant Bradley in an interrogation before now. See *People v. Evans*, 2013 IL 113471, ¶ 10 (to show cause, a defendant must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings). Thus, the defendant has failed to establish the cause prong

of the cause-and-prejudice test to file his successive postconviction petition on this argument as related to codefendant Bradley. Since both prongs must be established, we need not address the prejudice prong of the defendant's argument as related to codefendant Bradley.

¶ 29    Next, we turn to the defendant's argument concerning attorney Schultz's representation of Ms. Wilson. The State concedes that the cause prong of the cause-and-prejudice test is satisfied as to Ms. Wilson because the defendant established that he was not aware of the facts surrounding attorney Schultz's representation of Ms. Wilson until Mr. Avant told him about the representation in March 2018. The defendant therefore could not have raised this argument previously. Consequently, our analysis turns on the prejudice prong.

¶ 30    Initially, we will clarify the background facts and dates surrounding the defendant's argument pertaining to Ms. Wilson, as this case involves many individuals, relationships, and procedural interconnections. The shooting of Mr. Shelby occurred on September 21, 2004, and an arrest warrant was issued for the defendant that same day. The defendant was arrested on December 19, 2004. Attorney Schultz filed his first appearance on behalf of the defendant on December 18, 2004, the day before the defendant was arrested. But two days later, on December 20, 2004, a public defender filed an appearance on behalf of the defendant. On January 11, 2005, the defendant was arraigned and a public defender was appointed to represent him. On April 7, 2005, the public defender informed the court that attorney Schultz was once again going to file an appearance to represent the defendant. On April 8, 2005, the public defender was granted leave to withdraw and attorney Schultz filed an appearance to represent the defendant. During discovery in preparation for the defendant's trial, Ms. Wilson was listed on the State's witness list.  On April 16, 2007, the defendant's bench trial began, in which he was represented by attorney Schultz.

Ultimately, the State did not call Ms. Wilson to testify.

¶ 31    Ms. Wilson had been arrested in an unrelated drug case in 2003, in which she was continuously represented by attorney Schultz. She pled guilty in that case on January 12, 2005. However, Ms. Wilson was subsequently charged with having violated her probation. Probation violation proceedings commenced in the circuit court of Cook County and Ms. Wilson completed her probation in March 2007.

¶ 32    The defendant's *pro se* petition clearly provided enough information to establish that there was an overlap in attorney Schultz's representation of the defendant and his representation of Ms. Wilson; notably, an overlap of which the defendant was never made aware. In particular, the defendant explicitly pled: that attorney Schultz represented Ms. Wilson during the same time period when was representing the defendant in his murder trial; that Ms. Wilson was a named witness on the State's list of witnesses in the defendant's murder trial; and that Ms. Wilson had a stake in the defendant's conviction. The defendant inferred that if he was found guilty of the murder, it reduced the chances of Ms. Wilson's son, codefendant Bradley, being found guilty. As we have explained at this point in the proceedings, the defendant is not required to *prove* his well-pled allegations.

¶ 33    Thus, taking these well-pled allegations as true, which we must at this stage (*People v. Johnson*, 2020 IL App (1st) 171362, ¶ 34), we find that the defendant made a *prima facie* showing that attorney Schultz operated under a *per se* conflict of interest during the defendant's trial. The defendant accordingly should be allowed to advance his petition to the next stage of the proceedings and have the opportunity to present the proof necessary at an evidentiary hearing. Indeed, our supreme court has made clear that, *at this stage* in the proceedings, a defendant is only

required to *plead* cause and prejudice in order to file a successive postconviction petition:

> "From a practical standpoint, if a petitioner is required to establish cause and prejudice conclusively prior to being granted leave to file a successive petition, it may render the entire three-stage postconviction process superfluous. Section 122–1(f) does not provide that a petitioner is entitled to relief upon satisfaction of the cause-and-prejudice test. It only gives a petitioner an avenue for filing a successive postconviction petition. The legislature clearly intended for further proceedings on successive postconviction petitions."

*Smith*, 2014 IL 115946, ¶ 29.

¶ 34    The State makes much of the fact that Ms. Wilson was only a *named witness*, and that she never actually testified at the defendant's trial. The State claims that, consequently, the defendant could never prove a *per se* conflict of interest. Yet this argument ignores the well-established principle that, a *possible* conflict is enough for purposes of the *per se* rule. *People v. Lawson*, 163 Ill. 2d 187, 217-18 (1994). And when determining whether a possible *per se* conflict arose from defense counsel's representation of a named witness, the question is whether the named witness *stood to benefit from the defendant's conviction. People v. Morales*, 209 Ill. 2d 340, 347 (2004). Here, we need not speculate about whether Ms. Wilson stood to benefit from the defendant's conviction. Ms. Wilson, quite importantly, is the mother of codefendant Bradley, who was tried separately from the defendant and who was *the only other suspect* in the murder. Notably, codefendant Bradley was acquitted of all charges in this case. It is reasonable to infer that Ms. Wilson would benefit if the defendant, rather than her son, was convicted.

¶ 35    Further, we find the reasoning from Justice Kilbride's concurrence in *Morales* to be

instructive. It emphasizes that it is not always possible to know, at the time of disclosure, *if* a named witness will end up testifying. *Id.* at 352-53 (Kilbride, J., concurring). This is important to consider since, under the State's argument, the distinction between a conflict and a *possible* conflict merely comes down to whether the witness is ultimately called to testify by the State. The defendant in this case did not know and could not have known whether Ms. Wilson was going to be called as a witness until the State rested. Moreover, attorney Schultz *never disclosed* his representation of Ms. Wilson to the defendant at any time. Simply put, had the State called Ms. Wilson to testify, that would have been considered a *per se* conflict. Since the defendant was not aware of the dual representation, he could not have *knowingly* waived the conflict.

¶ 36    Considering that the defendant pled facts detailing that attorney Schultz represented Ms. Wilson during the same time period he represented the defendant; that Ms. Wilson was a named witness for the State; that she stood to benefit from the defendant's conviction; and that the defendant was never made aware of attorney Schultz's simultaneous representation of Ms. Wilson; we find that the defendant adequately pled a claim for a *per se* conflict of interest. See *Smith*, 2014 IL 115946, ¶ 35. The defendant therefore should be allowed to move forward to the next stage of postconviction proceedings. See *People v. Domagala*, 2013 IL 113688, ¶ 34.

¶ 37    Thus, the trial court erred in denying the defendant leave to file his successive postconviction petition. We emphasize that only the claim pertaining to the conflict related to Ms. Wilson should advance in the trial court. "The cause and prejudice test is to be applied to individual claims, not to the petition as a whole." *Edwards*, 2012 IL App (1st) 091651, ¶ 20. At an evidentiary hearing on remand, the defendant will have to prove his claim that a conflict of interests existed during his trial due to attorney Schultz's contemporaneous representation of Ms.

Wilson, but he is entitled to have the opportunity to do so. We accordingly reverse the trial court's judgment dismissing the defendant's successive postconviction petition and remand the case for further proceedings consistent with this order and the Act.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings.

¶ 40    Reversed and remanded.